[Civ. No. 15454. First Dist., Div. One. Apr. 7, 1953.]

G. W. BRAINARD, as Trustee, etc., Respondent, v. JAMES H. JONES et al., Defendants; CHAS. N. DOUGLAS, Appellant.

Chas. N. Douglas for Appellant.

Norman A. Eisner and Haskell Titchell for Respondent.

BRAY, J.—Defendant Douglas, sued as First Doe, appeals from a declaratory relief judgment against him.

## FACTS

There is no dispute as to the facts. In 1930, Ellery Arms Company, a corporation, owed approximately $101,000 to some 300 general creditors, more than $100,000 to its president and principal stockholder William Ellery, $11,500 to Christopher Ellery, and $2,500 to James H. Jones. (The latter two assigned their claims to defendant and will hereafter be referred to as assignors.) Through the San Francisco Board of Trade the corporation sought an extension of time of payment from

the general creditors. After negotiations and to induce those creditors to grant the extension, an agreement was entered into between the general creditors, the corporation, and William Ellery. It extended the time of payment of the claims of the creditors for one year, to December 15, 1931, upon certain conditions, including (1) the delivery by William Ellery to Brainard, the secretary of the Board of Trade, "acting as Trustee, for the pro rata use and benefit of creditors executing this" instrument, of deeds to certain real property owned by William individually. Power of sale was given the trustee. (2) The corporation's business was to be continued under a manager selected by the creditors' committee. (3) If a net loss was incurred between the date of the agreement and March 15, 1931, the business was to be liquidated. (4) William was to deliver to the trustee a full release of all corporation indebtedness to him. Assignors did not sign this agreement. As an inducement to the general creditors to sign this agreement, the corporation offered to obtain from assignors waivers or subordinations of their claims. Assignors signed waivers to the effect that in consideration of the general creditors extending the time of payment of their claims, assignors agreed not to attempt to collect their claims until after the general creditors' claims had been fully satisfied. These waivers were upon condition that (1) interest be paid upon assignors' claims "pending the payment to the other creditors," and (2) that the waivers would not prejudice assignors' rights in the event of bankruptcy of the corporation or William. As agreed, William deeded his property to the trustee. A manager operated the business for the creditors, but the business proved unprofitable. June 13, 1931, at the request of the creditors' committee and pursuant to the agreement, the corporation executed an assignment for the benefit of creditors to Brainard as trustee, since he was the secretary of the Board of Trade. The business was not liquidated until February 12, 1932. The assets of the business were then sold. Interest had been paid to assignors on their claims and continued to be paid until October 13, 1933. On that date, Wren, attorney for the Board of Trade, wrote assignors to the effect that under the terms of their waivers it was agreed that interest would be paid them during the extension of the general creditors' claims; that the extension had long since expired and the business had been liquidated on February 12, 1932. In spite of that fact, the committee had permitted interest to be paid assignors up to the present time with the result that while the

general creditors had received only 10 per cent of their claims, assignors had received 16 per cent of theirs. He then stated that the funds received in liquidation had been exhausted "by the payment of these interest charges and the payment of taxes and other carrying charges in connection with the real properties which are being held, make it necessary for us to discontinue the payment of any further interest on these claims." Assignors are then notified that no further interest will be forthcoming on their claims. At this time Brainard still had as trustee the William Ellery realty. Later and in 1939 one parcel was sold, the other in 1946. From the proceeds dividends were made to the general creditors which, including the previous 10 per cent, returned them 36½ per cent of their claims. Nothing was paid assignors. In 1937 assignors brought suit against Brainard and others for interest on their claims. In 1943 the suit was dismissed for lack of prosecution. From the proceeds of the sale of the realty there is a balance of $7,055.95 in the hands of the trustee. Plaintiff brought this action to have it declared that defendant has no interest in said fund.

### FINDINGS

The trial court found, among other matters, that assignors were not included among those for whose benefit William transferred his realty; that there was no agreement to pay interest to assignors but the continuation of payment of it was optional with the general creditors, and that upon failure to pay interest assignors' waiver terminated and any restriction on their right to enforce their claims likewise ended; that any cause of action of assignors against the trustee arose at that time and is now barred by sections 337 (1) and 339 (1), Code of Civil Procedure; that defendant is not entitled to any portion of the balance held by the trustee.

### DEFENDANTS' CLAIMS BARRED

In spite of the facts that assignors were not a party to the realty trust agreement, that their waiver agreement was unilateral and that there was no agreement by the creditors or trustee to continue to pay them interest, defendant strenuously insists that the trust formed when William transferred his property to the trustee was for the benefit of assignors. The foregoing recital of the undisputed facts shows unquestionably that it was not. The authorities concerning trusts cited by defendant are not in point for the reason that the facts here

demonstrate no relationship between assignors and the William Ellery trust.

Assuming that there was, the notice sent assignors in 1933 by the trustee, through his attorney, constituted a termination of such trust, and started the statute of limitations running. Defendant cites authorities such as *Estate of Murphey,* 7 Cal. 2d 712 [62 P.2d 374], and *Bank of California* v. *Superior Court,* 16 Cal.2d 516 [106 P.2d 879], to the effect that neither the trustee nor other beneficiaries of a trust may change its terms without the consent of all beneficiaries. Here there was no attempt to change terms by anyone. It was a repudiation of the trust, if any existed. The statute of limitations begins to run from the date of the repudiation. (*Rafferty* v. *Mitchell,* 4 Cal. App.2d 491 [41 P.2d 563].). Defendant contends that the notice of repudiation is not effective because it was signed by the attorney for the trustee rather than by the latter. There is no merit to this point. Defendant also has confused the trust created by the assignment of the corporation business and assets to Brainard as trustee for the benefit of creditors and the trust created by William. The former did include assignors, and it was from the corpus of that trust that assignors received their interest until that corpus was exhausted.

The judgment is affirmed.

Peters, P. J., and Wood (Fred B.), J., concurred.